TED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| LILETTA J. KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-cv-125-DCP |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 12]. Now before the Court is

Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16],

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18], and

Plaintiff's Reply Brief [Doc. 19]. Liletta J. King ("Plaintiff") seeks judicial review of the decision

of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill

("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and

**GRANT** the Commissioner's motion.

## I.      PROCEDURAL HISTORY

On June 10, 2013, Plaintiff protectively filed a Title II application for disability insurance

benefits [Tr. 192–93], and subsequently protectively filed a Title XVI application for supplemental

security income benefits on June 24, 2013 [Tr. 194–99], pursuant to Title II and XVI of the Social

Security Act, 42 U.S.C. §§ 401 *et seq.*, and 1381 *et seq.*, claiming a period of disability that began

on November 5, 2012, the amended onset date. [Tr. 207 (amended onset date)].[1] After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 147–48]. A hearing was held on December 4, 2015. [Tr. 26–68]. On February 12, 2016, the ALJ found that Plaintiff was not disabled. [Tr. 10–25]. The Appeals Council denied Plaintiff's request for review on February 6, 2017 [Tr. 1–5], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on April 5, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 30, 2009.

2. The claimant has not engaged in substantial gainful activity since November 5, 2012, the amended alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments:  seizure disorder; cervical and lumbar problems; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[1] On November 11, 2015, through counsel, Plaintiff amended the alleged onset date of her disability to November 5, 2012 and acknowledged that she "effectively dismisses her claim" to Title II disability benefits. [Tr. 207].

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she must avoid concentrated exposure to extreme heat, is unable to climb ladders, ropes, or scaffolding, is unable to have exposure to unprotected heights, open flames, or open waters, and is unable to operate motor vehicles or moving machinery.

6.  The claimant is capable of performing her past relevant work in data entry or as an administrative assistant.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.  (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from November 5, 2012, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 15–20].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).  It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the

case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

4

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.     ANALYSIS

On appeal, Plaintiff argues that the ALJ's step three and RFC determinations are not supported by substantial evidence. First, Plaintiff claims that the ALJ failed to properly analyze whether Plaintiff's seizure disorder met or equaled Listing 11.03. [Doc. 16. p. 17–22]. Additionally, Plaintiff contends that the ALJ erred at step three because he improperly applied Social Security Ruling 06-3p by failing to address lay witness testimony and written statements

submitted in support of Plaintiff's application.  [*Id.* at 22].  Lastly, Plaintiff asserts that the ALJ's

RFC determination is not supported by substantial evidence because the ALJ did not give proper

weight to the opinion of Plaintiff's treating neurologist, Dr. Gregory Wheatley, or the opinion of

Plaintiff's examining consultant, Dr. Eva Misra.  [*Id.* at 22–25].  The Court will address each

alleged error in turn.

### A.    Listings 11.02 and 11.03

Plaintiff contends that the ALJ erred in finding that her seizure disorder did not meet the

requirements of Listing 11.03, as "the evidence demonstrates that [Plaintiff's] seizures meet and/or

equal [Listing 11.03]," and the "ALJ failed to properly apply the sequential evaluation to this case

and analyze the evidence under the listings."  [*Id.* at 18, 21].

At step three of the sequential evaluation, a claimant may establish disability by

demonstrating that her impairment is of such severity that it meets, or medically equals, one of the

listings within the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix

1.  *Walters*, 127 F.3d at 529; *Foster v. Halter*, 279 F.3d 348, 352 (6th Cir. 2001).  The Listings

describe impairments that the SSA considers to be "severe enough to prevent an individual from

doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R.

§ 404.1525(a).  A claimant who meets the requirements of a Listed Impairment will be deemed

conclusively disabled, and entitled to benefits, but the claimant has the burden to prove that all of

the elements are satisfied.  *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir.

1984); *see also Walters*, 127 F.3d at 529.  Only when an impairment satisfies all of the listing's

criteria will the impairment be found to be of listing level severity.  20 C.F.R. § 404.1525(d).

In determining whether an impairment is of listing level severity, the ALJ is tasked with

comparing the medical evidence of record with a listing's requirements.  *Reynolds v. Comm'r of*

*Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011). However, the Sixth Circuit rejected "a heighted articulation standard" with regard to the ALJ's step three finding. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). "If a claimant does not have one of the findings, however, she can present evidence of some medical equivalent to that finding." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011) (citations omitted). Yet, it is not sufficient to come close to meeting the conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (affirming Commissioner's decision that Plaintiff didn't meet Listing where medical evidence "almost establishes a disability").

In the disability decision, the ALJ held that Plaintiff's seizure disorder did not meet or medical equal the severity of Listings 11.02 or 11.03. [Tr. 17]. Under Listing 11.02 *Epilepsy—convulsive epilepsy*, (grand mal or psychomotor), seizures must be "documented by detailed description of a typical seizure pattern, including all associated phenomena." 20 C.F.R. § 404, Appendix 1, § 11.02. Further, seizures must occur more than once a month and "in spite of at least 3 months of prescribed treatment[.]" *Id.* Similarly, Listing 11.03, for nonconvulsive epilepsy, requires:

> Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. § 404, Appendix 1, § 11.03. The Listings instruct that the "degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures . . . Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available." *Id.* at § 11.00(A). Lastly, the Listings also make clear

7

that 11.02 and 11.03 will only apply "if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment." *Id.*

As Plaintiff fails to argue, and no medical evidence suggests that Plaintiff has convulsive seizures, Listing 11.02 is not at issue. Turning to Listing 11.03, Plaintiff argues that she meets Listing 11.03, as well as the new neurological listing issued by the Commissioner, which became effective in September 2016, approximately seven months after the ALJ's decision in this case. [Doc. 16 p. 17–18]. On July 1, 2016, the Social Security Administration ("SSA") revised the listings criteria used to evaluate claims based on neurological disorders, including section 11.00, effective September 29, 2016. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 11.03. The SSA will use the new listings "on and after their effective date in any case in which [it makes] a determination or decision." *See Beerman v. Comm'r of Soc. Sec.*, No. 2:16-cv-896, 2018 WL 1187804, at *8 n.3 (S.D. Ohio Mar. 7, 2018*)*. In the present case, however, the Court applies section 11.03, which was in effect at the time the Commissioner issued the decision.

For his step three determination regarding Plaintiff's seizure disorder, the ALJ stated as follows:

> Despite her combined impairments, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.
> . . .
>
> The undersigned has also reviewed section 11.02 and 11.03 and finds that the frequency of the claimant's seizures, as well as the symptoms during seizures, do not rise to listing level.

[Tr. 17]. It is not clear in this conclusory step three determination which evidence the ALJ relied upon in concluding that the Plaintiff did not meet Listing 11.02 or 11.03. Therefore, solely in his step three analysis, the ALJ did not provide adequate reasoning to facilitate meaningful review by

the Court. *See Reynolds v. Comm'r Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) ("In short, the ALJ needed to actually evaluate the evidence, compare it to [ ] the Listing, and give an explained conclusion, in order to facilitate meaningful review.").

However, "[t]he Sixth Circuit has declined to adopt a blanket rule that remand is required whenever an ALJ 'provides minimal reasoning at step three of the five-step inquiry.'" *Wischer v. Comm'r of Soc. Sec.*, No. 13-cv-180, 2015 WL 518658, at *12 (S.D. Ohio Feb. 6, 2015), *report and recommendation adopted by*, 2015 WL 1107543 (S.D. Ohio Mar. 11, 2015) (quoting *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 364–66 (6th Cir. 2014)); *see also Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (per curiam) (rejecting argument that ALJ erred by not making specific findings at step three because the ALJ's conclusion was supported by substantial evidence in the record). In *Forrest*, the Sixth Circuit upheld the ALJ's conclusory finding at step three for two reasons: (1) the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three; and (2) even if the ALJ's factual findings failed to support his step three findings, the error was harmless because the plaintiff had not shown his impairments met or medically equaled in severity any of the listed impairments. 591 F. App'x at 366. Here, as detailed below, the ALJ made sufficient factual findings elsewhere in the decision to support why Plaintiff's impairments did not meet the requirements of Listing 11.03.

The ALJ's determination regarding whether Plaintiff met Listing 11.03 "must be read in the context of the entire decision." *Holmes v. Comm'r of Soc. Sec.*, No. 1:17-cv-1648, 2018 WL 3544902, at *3 (N.D. Ohio July 24, 2018) (citing *Forrest*, 591 F. App'x at 366). In the present case, when determining Plaintiff's RFC, the ALJ examined the frequency of Plaintiff's seizures based upon Plaintiff's medical records. [Tr. 18]. The ALJ first discussed Plaintiff's seizure disorder, as well as Plaintiff's claims that she normally experiences three to five seizures per month

in the summer months, and one to two seizures per month in the fall and winter months. [*Id.*]. Next, the ALJ discussed the medical records detailing Plaintiff's treatment by Dr. Wheatley for complex partial seizures. [*Id.*]. Specifically, the ALJ analyzed the frequency of Plaintiff's seizures as detailed by Dr. Wheatley, noting first that "exams in November of 2015 have the claimant reporting having one or two complex partial seizures per month." [*Id.*]. The ALJ noted that in "March of 2015, [Plaintiff] reported having only three complex partial seizures since her last visit in November of 2014, which would be less than once a month." [*Id.*]. Further, the ALJ stated that "[d]uring her November 2014 exam, [Plaintiff] reported having experienced only one or two complex partial seizures since her last visit in September of 2014." [*Id.*].

The ALJ also analyzed Dr. Wheatley's "September 2, 2014 Seizure Activity Assessment," where Dr. Wheatley noted that Plaintiff "experiences . . . 6 to 8 non-convulsive seizures per month." [Tr. 19]. However, in giving partial weight to the seizure assessment, the ALJ stated that he "does not see the evidence in the record to support that the claimant experiences eight seizures a month that would result in absenteeism." [*Id.*]. Further, the ALJ noted that most of Plaintiff's exams "note stability with recommendations to follow up every three to four months unless seizure activity increases," and Plaintiff did not increase the frequency of her quarterly exams. [*Id.*]. Ultimately, in reviewing Plaintiff's medical records, the ALJ also discussed that "in 2013, Dr. Wheatley describes the claimant as doing well with no neurological exhibits . . . and in July of 2012, records from the Cherokee Health Systems note no seizures since May of 2012." [*Id.*].

This Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence supports the ALJ's conclusion that Plaintiff did not meet the

requirements of Listings 11.02 and 11.03. Despite the brief conclusion in step three, the ALJ's examination of the medical records while determining Plaintiff's RFC allows the Court to review the ALJ's finding that Plaintiff did not meet Listing 11.02 or 11.03. *Compare Brown v. Berryhill*, No. 1:17-CV-1912, 2018 WL 3548843, at *19 (N.D. Ohio July 24, 2018) (holding despite a brief step three analysis, "[a]t step four, the ALJ made sufficient factual findings . . . to support his step three conclusion and to enable the Court to meaningfully review the decision"), *with Hart v. Comm'r of Soc. Sec.*, No. 2:14-cv-527, 2015 WL 4365463, at *6 (S.D. Ohio July 16, 2015), *report and recommendation adopted by*, 2015 WL 5013359 (S.D. Ohio Aug. 25, 2015) (holding "because the ALJ has not adequately explained her step three findings, the issue becomes whether Plaintiff has raised a substantial question as to whether his seizure disorder meets or medically equals in severity the requirements of Listing 11.02 or 11.03").

Plaintiff also argues in her reply brief that the ALJ improperly focused on the "number of seizures per month as the only issue determining if Ms. King meets a listing." [Doc. 19 p. 2]. In the present case, the ALJ evaluated the medical record regarding Plaintiff's seizures, providing support for his finding that the frequency of Plaintiff's seizures did not meet the frequency requirement of Listing 11.03. *See, e.g.*, *Springett v. Comm'r of Soc. Sec.*, No. 1:15-cv-998, 2017 WL 1044787, at *8 (W.D. Mich. Mar. 20, 2017) (finding "[a]s is evident by the ALJ's discussion, Plaintiff's seizures did not meet the frequency requirement of either listing"); *Gordon v. Comm'r of Soc. Sec.*, No. 1:16-CV-301, 2016 WL 7486278, at *4 (W.D. Mich. Dec. 30, 2016) (upholding ALJ's cursory analysis finding that the Plaintiff failed to have seizures at the frequency required to meet Listing 11.03); *Patton v. Comm'r of Soc. Sec.*, No. 1:13-CV-68, 2013 WL 5774709, at *12 (N.D. Ohio Oct. 24, 2013) ("The evidence shows Plaintiff failed to meet the frequency criteria set forth in Listings 11.02 and 11.03."). Further, Plaintiff fails to cite any support for the proposition

that the ALJ was required to base his Listing decision on additional factors.

Ultimately, the ALJ's subsequent examination of Plaintiff's medical records to determine the frequency of Plaintiff's seizures provides sufficient reasoning for his step three determination that "the frequency of the claimant's seizures . . . do not rise to the listing level." [Tr. 17]. Therefore, the Court finds that the ALJ's determination that Plaintiff's seizure disorder did not satisfy the Listings is based on substantial evidence.

### B.        Lay Witness Testimony

Next, Plaintiff maintains that the ALJ did not properly consider the testimony of her friend, Latosha Herd, or the written statements of her boyfriend, Arzolia Humphrey, and daughter, Kendra King-Johnson. [Doc. 16 p. 22]. Specifically, Plaintiff claims that the ALJ's step three finding is not supported by substantial evidence because "the ALJ improperly applied Social Security Ruling 06-3p." [*Id.*].

During the disability hearing, Ms. Herd testified that she agreed with Plaintiff's testimony, and described one occasion when Plaintiff experienced a seizure while accompanying Ms. Herd and her daughter to an appointment at Children's Hospital. [Tr. 61–65]. Ms. Herd stated that even though heat triggered Plaintiff's seizures, Plaintiff experienced a seizure in the hospital, which was kept at a cool temperature. [Tr. 63]. Lastly, Ms. Herd detailed that she has heard Plaintiff experience a seizure while talking with her on the phone "seven or eight times," although it has "been a while." [Tr. 63–64].

Plaintiff also submitted statements from Mr. Humphrey and Ms. King-Johnson in support of her request for a hearing before an ALJ. [Tr. 287–88]. Mr. Humphrey detailed the length of Plaintiff's seizures, as the "seizures usually last about 3 minutes and the longest . . . lasted around 5 minutes." [Tr. 287]. He discussed Plaintiff's symptoms during a seizure and stated that Plaintiff

"has had a lot of seizures when she gets hot." [*Id.*]. Mr. Humphrey also provided three examples of seizures that Plaintiff has suffered since 2011. [*Id.*]. Ms. King-Johnson submitted a statement explaining Plaintiff's reaction while experiencing a seizure, and that her mother's seizures "last about 2-3 minutes." [Tr. 288]. Additionally, Ms. King-Johnson stated that Plaintiff had a seizure while driving which caused a wreck in 2013, and later missed her stop while taking public transportation, which resulted in her mother "not [going] anywhere without someone." [*Id.*].

The regulations provide that an ALJ may consider information from "non-medical sources." *See* 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4); *see also* Social Security Ruling 06–3p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (listing "other sources" as defined in §§ 404.1513(d) and 416.913(d) as including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers"). In considering statements from "other sources," under Social Security Ruling 06-3p, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 2006 WL 2329939, at * 1.

Plaintiff correctly states that the ALJ failed to address the testimony of Ms. Herd, or the written statements of Mr. Humphrey and Ms. King-Johnson, in his decision. Although an ALJ should not "disregard [ ] without comment" a lay witness's testimony, *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012), failure to do so is not necessary reversible error. *See, e.g. Weaver v. Comm'r of Soc . Sec.*, No. 3:13-cv-713, 2015 WL 64873, at *10 (E.D. Tenn. Jan. 5, 2015).

Here, Ms. Herd's testimony, and the written statements of Mr. Humphrey and Ms. King-Johnson are duplicative of Plaintiff's testimony. Ultimately, "testimony of lay witnesses need not be explicitly addressed when it is repetitive of the plaintiff's assertions." *Weaver*, 2015 WL 64873, at *10. Ms. Herd testified chiefly as to Plaintiff's symptoms while experiencing seizures, as well as described one of Plaintiff's seizures. [Tr. 63]. Further, Ms. Herd testified that she agreed with Plaintiff's testimony. [Tr. 63]. Mr. Humphrey and Ms. King-Johnson's statements detailed the symptoms and frequency of Plaintiff's seizures, as well as Plaintiff's response. [Tr. 287–88].

Plaintiff testified similarly to Ms. Herd, Mr. Humphrey, and Ms. King-Johnson by addressing her symptoms during a seizure [Tr. 41], heat as a trigger [Tr. 42], the average length and frequency of her seizures [Tr. 45], as well as her responsiveness and the mental effect of seizures [Tr. 55–56]. Plaintiff also addressed the subject matter of Mr. Humphrey's testimony [Tr. 58], and her seizure that resulted in a car wreck [Tr. 44, 59], which Ms. King-Johnson also detailed in her written statement [Tr. 288]. Lastly, Plaintiff discussed her seizure while taking the bus to a hospital visit, which resulted in her avoiding public transportation. [Tr. 60–61]. Accordingly, the testimony of Ms. Herd, Mr. Humphrey, and Ms. King-Johnson was duplicative of Plaintiff's testimony. *See Paskewitz v. Astrue,* No. 1:11-CV-2371, 2012 WL 5845357, at *13 (N.D. Ohio Oct. 29, 2012) (finding the ALJ "did not err in failing to discuss" lay witness testimony, as the testimony "merely reiterate[s] [claimant's] own testimony, [and the claimant's] assertions were specifically addressed by the ALJ in his RFC determination").

Further, the ALJ explicitly stated that Plaintiff's RFC determination was made "[a]fter careful consideration of the entire record." [Tr. 17]; *see Waters v. Astrue,* No. CIV.A. 2:10–213–DCR, 2011 WL 3847421, at *4 (E.D. Ky. Aug. 26, 2011) (finding that the ALJ did not err in failing to specifically address lay witness testimony where he stated that he considered the entire

record).  The ALJ stated that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence *and other evidence*." [Tr. 18] (emphasis added).  Specifically, the Court notes that, pursuant to 20 C.F.R. §404.1529, "other evidence" includes "statements or reports from [a claimant], [a] treating or nontreating source, *and others* about [a claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how [claimant's] impairment(s) and any related symptoms affect [the] ability to work.  20 C.F.R. §404.1529 (emphasis added); *see also Weaver*, 2015 WL 64873, at *10 (finding ALJ's statement that she considered the record in full to include unaddressed testimony of the claimant's sister).  Additionally, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments, and the opinion is supported by substantial evidence.  *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).

The Court finds that the testimony of Ms. Herd, Mr. Humphrey, and Ms. King-Johnson was duplicative of Plaintiff's testimony, and, further, the ALJ stated that he considered the entire record in full.  The ALJ specifically noted that he considered evidence as outlined in 20 C.F.R. § 404.1529, which includes statements by others about a claimant's symptoms and impairments.  Therefore, the Court finds that the ALJ followed agency procedures in weighing all of the evidence, and that any error in failing to specifically address lay witness testimony was harmless.

### C.    Proper Weight to Opinions of Treating Physician and Examining Consultant

Plaintiff argues that the ALJ failed to assign proper weight to the opinions of Plaintiff's treating neurologist, Dr. Gregory Wheatley, and examining consultant, Dr. Eva Misra, when determining Plaintiff's RFC.  [Doc. 16 p. 22–25].

### 1. Dr. Gregory Wheatley, MD

Plaintiff first claims that the ALJ committed legal error when assigning partial weight to Dr. Wheatley's Seizure Activity Assessment, as well as by failing to make an assessment regarding the weight to be given to Dr. Wheatley's Attending Physician Statement. [Doc. 16 p. 22, 24]. Plaintiff presented to Dr. Wheatley on August 14, 2009, upon referral for treatment of her seizures. [Tr. 637]. Dr. Wheatley noted that Plaintiff was being treated through a combination of Keppra and Lamictal, and subsequently diagnosed a possible seizure disorder. [Tr. 638]. Dr. Wheatley continued to treat Plaintiff upon referral from Cherokee Health Systems [Tr. 633], and Plaintiff was admitted for a four-day inpatient video/EEG monitoring session from November 5, 2012 to November 9, 2012, after which Plaintiff was diagnosed with a seizure disorder. [Tr. 514]. Plaintiff then continued to see Dr. Wheatley on a quarterly basis. [Tr. 629–633].

On September 2, 2014, Dr. Wheatley completed a Seizure Activity Assessment, wherein he diagnosed epilepsy and noted that, with medication, Plaintiff would have an average of six to eight non-convulsive seizures per month. [Tr. 1059]. In addition, Dr. Wheatley opined that Plaintiff should avoid heights and moving machinery, should not drive, should avoid stress, and that Plaintiff's medical impairments would result in increased absenteeism of three to four days per month due to illness or medical treatment. [*Id.*]. On that same day, Dr. Wheatley completed an Attending Physician's Statement, noting that Plaintiff had been diagnosed with "epilepsy–complex partial." [Tr. 1060]. Further, Dr. Wheatley found that Plaintiff would be able to perform sedentary work, while also stating "possibly absenteeism." [*Id.*].

The ALJ concluded that Dr. Wheatley's Seizure Activity Assessment was entitled to "partial weight." [Tr. 19]. The ALJ agreed "with precluding the claimant from hazards, driving, and heights, but does not see evidence in the record to support that the claimant experiences eight

seizures a month that would result in absenteeism." [*Id.*]. Specifically, the ALJ noted that Plaintiff's exams noted "stability with recommendations to follow-up every three to four months unless seizure activity increases," and that Plaintiff's exams continued on a quarterly basis. [*Id.*]. Additionally, the ALJ stated that he "gives little weight to Dr. Wheatley's report on September 2, 2014 that describes the claimant as totally disabled." [Tr. 18].

### a. Seizure Activity Assessment

Plaintiff argues that the ALJ failed to give proper weight to Dr. Wheatley's opinion set forth in the September 2, 2014 Seizure Activity Assessment, specifically challenging the ALJ's statement that the evidence in the record did not support Dr. Wheatley's opinion that Plaintiff would experience eight seizures a month that would result in absenteeism. [Doc. 16 p. 23]. Rather, Plaintiff claims that Dr. Wheatley stated that she would experience six to eight seizures a month, with medication, and that she would likely miss three to four days of work per month. [*Id.* at 23–24]. Additionally, Plaintiff claims that the ALJ selected only certain statements from Dr. Wheatley's records, as well as emergency room records after Plaintiff suffered a seizure. [*Id.* at 24].

In considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[2] But the ALJ must do so only if that opinion "is well-supported by medically acceptable clinical and

_____

[2] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* If the opinion is not given controlling weight, as here, the ALJ must consider the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source," as well as "other factors." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527).

The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson*, 378 F.3d at 544); 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).

The Court finds that the ALJ properly considered the consistency of Dr. Wheatley's Seizure Activity Assessment with the other evidence of record. *See Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes."). The ALJ agreed with Dr. Wheatley's opinion relating to precluding Plaintiff from hazards, driving, and heights, while holding that Dr. Wheatley's claim that Plaintiff would suffer six to eight seizures per month was not supported by the record. [Tr. 19].

Here, as the Court previously discussed, the ALJ analyzed the frequency of Plaintiff's seizures based upon Dr. Wheatley's treatment notes and Plaintiff's medical records. [Tr. 18].

18

First, the ALJ noted that Plaintiff reported suffering on average one to two complex partial seizures per month in November 2015, and that Plaintiff reported suffering only three complex partial seizures total from November of 2014 until March of 2015. [*Id.*]. Similarly, Plaintiff reported only having one or two complex partial seizures from September of 2014 until November of 2014. [*Id.*]. The ALJ also discussed that in 2013, Dr. Wheatley described Plaintiff as "doing well with no neurological deficits," and that Plaintiff reported to Cherokee Health Systems that she did not suffer any seizures from May of 2012 until July of 2012. [Tr. 19]. Plaintiff fails to indicate any medical evidence in the record which suggests that Plaintiff would suffer more than six seizures per month, as the most specified in Dr. Wheatley's treatment notes would be two complex partial seizures per month. Additionally, the ALJ noted that the medical records designate that Plaintiff "is described as doing fairly well and stable," and that "most exams note stability," [Tr. 18–19], thus providing no justification for an expected increase in seizures per month.

Dr. Wheatley's Seizure Activity Assessment opines on the expected number of seizures per month, and the ALJ properly stated good reasons for assigning partial weight to the opinion because there was not sufficient evidence in the medical record that Plaintiff would suffer six to eight seizures per month. *See, e.g.*, *Springett v. Comm'r of Soc. Sec.*, No. 1:15-cv-998, 2017 WL 1044787, at *8 (W.D. Mich. Mar. 20, 2017) (holding the ALJ "gave good reasons, supported by substantial evidence, for aligning little weight" to portion of treating neurologist's opinion because "there is no record evidence that Plaintiff's seizures were occurring at a frequency that would cause him to be absent from work more than four times a month"); *Bailey v. Colvin*, No. 3:15-cv-815, 2016 WL 4559972, at *8 (M.D. Tenn. Sept. 1, 2016) (holding the ALJ "sufficiently explained the low weight" given to treating neurologist's opinion of absenteeism by reviewing record of treatment), *report and recommendation adopted by*, 2016 WL 5724255 (M.D. Tenn. Sept. 30,

2016); *Alkire v. Colvin*, No. 1:15-cv-095-TWP-TAB, 2016 WL 2989040, at *8 (S.D. Ind. May 23, 2016) (holding ALJ provided good reason for rejecting treating neurologist's opinion regarding absenteeism based in part on the frequency of seizures after examining the record and determining "that the opinion was not supported by the substantial medical evidence").

Lastly, although Plaintiff claims that the ALJ improperly focused on the number of seizures in Dr. Wheatley's opinion, as opposed to the number of days of missed work, the ALJ held that the frequency of Plaintiff's seizures did not support Dr. Wheatley's statement regarding absenteeism. [Tr. 19]; *see, e.g.*, *Chestnut v. Colvin*, No. 4:13-cv-008, 2014 WL 2967914, at *3 (W.D. Va. June 30, 2014) ("While Plaintiff argues that the ALJ erred by focusing on the number of seizures, a significant discrepancy exists between Dr. Comiter's estimate that Plaintiff experiences an average of six seizures per year and the approximately seven seizures over a period of about four-and-a-half years that appear in the Record . . . this inconsistency between the medical evidence and Dr. Comiter's opinion supports the ALJ's decision to accord his opinion something less than controlling weight.").

While the ALJ is not required to discuss every piece of evidence in the record, he may not "cherry-pick the record to support [his] conclusions," but must instead "consider the evidence taken as a whole." *Davis v. Colvin*, No. 2:10–cv–0088, 2015 WL 3504984, at *6 (M.D. Tenn. May 28, 2015) (quoting *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984)). However, "the ALJ does not 'cherry pick' the evidence merely by resolving some inconsistencies unfavorably to a claimant's position." *Smith v. Comm'r of Soc. Sec.*, No. 1:11–CV–2313, 2013 WL 943874, at *6 (N.D. Ohio Mar. 11, 2013) (citing *Solembrino v. Astrue,* No. 1:10–CV–01017, 2011 WL 2115872, at *8 (N.D. Ohio May 27, 2011)). In the present case, the ALJ properly weighed the evidence as a whole, and found that Dr. Wheatley's statement that Plaintiff would suffer six to

eight seizures per month, and would have three to four days of absenteeism per month, was not supported by the record.

Although Plaintiff points to alternative evidence that she claims the ALJ ignored, such as Dr. Wheatley's statement that her seizure control was not complete, "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (alteration in original) (further citation omitted). This Court decides only whether there was substantial evidence to support the ALJ's decision. In that event, the Court is to defer. *Id.* Ultimately, the ALJ's determination that Dr. Wheatley's opinion contained in the Seizure Activity Assessment was entitled to partial weight is supported by substantial evidence.

### b. Attending Physician's Statement

Plaintiff also claims that the ALJ erred by failing to make an assessment regarding the weight to be given to Dr. Wheatley's Attending Physician Statement. [Doc. 16 p. 24]. In this September 2, 2014 opinion, Dr. Wheatley stated that Plaintiff's diagnosis was "epilepsy-complex partial," and that Plaintiff was "able to do sedentary work except possibly absenteeism." [Tr. 1060].

After reviewing Plaintiff's frequency of seizures based upon Dr. Wheatley's medical records, the ALJ stated that he "gives little weight to Dr. Wheatley's report on September 2, 2014 that describes the claimant as totally disabled." [Tr. 18]. However, it is not clear to the Court what the ALJ considered in order to evaluate, and ultimately, assign little weight to the Attending Physician's Statement given that the ALJ solely stated that the "report on September 2, 2014 . . . describes the claimant as totally disabled." [Tr. 18]. In the Attending Physician's Statement, Dr. Wheatley detailed Plaintiff's symptoms and diagnosed Plaintiff with "epilepsy-complex partial,"

but he did not complete the section titled "Extent of Disability." [Tr. 1060]. That particular section of the Attending Physician's Statement allowed Dr. Wheatley to designate whether "the patient [has] been Disabled and unable to do 'past work' since on or before 12/31/2009," but the record filed before the Court does not indicate that Dr. Wheatley designated that Plaintiff was disabled. [Tr. 1060].

As stated above, an ALJ must provide "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). Opinions on issues reserved to the Commissioner, however, such as whether a claimant is "disabled," are not considered medical opinions "because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(d)(1). Thus, opinions on issues reserved to the Commissioner, regardless of the opinion's source, "will not be given any special significance . . . ." *Id.*; *see* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). Nonetheless, such opinions cannot be ignored, and the ALJ "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." Soc. Sec. Ruling 96-5p, 1996 WL 374183 at *3.

Here, if Dr. Wheatley's Attending Physician's Statement did not opine that Plaintiff was totally disabled, it would constitute a medical opinion. *See, e.g.*, *Shelley v. Berryhill*, No. 3:16-cv-440-HBG, 2017 WL 4366721, at *6 (E.D. Tenn. Sept. 29, 2017) ("[T]he Court finds Dr. Brewer's Attending Physician Statement and Chest Pain Questionnaires are medical opinions because they opine on the Plaintiff's symptoms, diagnoses, and functional restrictions."). As the record before the Court indicates that Dr. Wheatley did not complete the "Extent of Disability" section of the Attending Physician's Statement, Dr. Wheatley did not designate Plaintiff as disabled.

Accordingly, the statement is a medical opinion for which the ALJ must provide good reasons for discounting, and the ALJ failed to do so. *See Francis*, 414 F. App'x at 804.

While the Sixth Circuit has instructed that courts should not hesitate to remand a case when an ALJ fails to adhere to the treating physician rule, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004), remand is not necessary if violation of the "good reason" rule is harmless. *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011). Error is harmless when:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527[(c)](2) . . . even though she has not complied with the terms of the regulation.

*Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (citation omitted). "In the last of these circumstances, the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Id.* (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470–72 (6th Cir. 2006)).

In the present case, the Court finds that the ALJ's decision indirectly attacked the supportability and consistency of Dr. Wheatley's Attending Physician's Statement. In his Attending Physician's Statement, Dr. Wheatley noted symptoms of Plaintiff's seizures and opined that such symptoms and seizures could possibly cause absenteeism. [Tr. 1060]. As the Court previously discussed, when assigning partial weight to Dr. Wheatley's Seizure Activity Assessment, the ALJ held that there was not sufficient evidence in the medical record that Plaintiff "experiences eight seizures a month that would result in absenteeism." [Tr. 19]. The ALJ further stated that most of Plaintiff's neurological exams note stability, and "Dr. Wheatley describes

[Plaintiff] as doing well with no neurological deficits." [*Id.*]. Dr. Wheatley's Seizure Activity Assessment and Attending Physician's Statement both discuss Plaintiff's possible absenteeism; however, the Seizure Activity Assessment more specifically opines that Plaintiff would miss three to four days per month of work. [Tr. 1059–60].

The ALJ's listed reasons for finding that there was not sufficient evidence in the record to support Dr. Wheatley's statement in the Seizure Activity Assessment regarding absenteeism also apply to Dr. Wheatley's Attending Physician's Statement. *See Haywood v. Colvin*, No. 2:14-cv-92, 2016 WL 2893261, at *3 (M.D. Tenn. May 18, 2016) ("Here the Court finds the ALJ's failure to mention this portion of Dr. Carlson's opinion was harmless error because the ALJ's reasons for rejecting Dr. Carlson's opinion that [Plaintiff] would need to miss two days of work every month apply with equal force to this part of his opinion."). The ALJ properly weighed the medical record as a whole, as well as analyzed the frequency of Plaintiff's seizures. Therefore, the ALJ indirectly attacked Dr. Wheatley's Attending Physician's Statement through the "ALJ's analysis of [the] physician's other opinions," as well as the ALJ's "analysis of the claimant's ailments." *See Friend*, 375 F. App'x at 551 (internal citations omitted); *see, e.g.*, *Winningham v. Colvin*, No. 2:11-cv-32, 2014 WL 2920011, at *21 (M.D. Tenn. June 27, 2014) (holding "the procedural safeguards of the treating physician rule were met" when an ALJ failed to specifically address an opinion, as "the reasons that the ALJ gave for not adopting [the doctor's first opinion] indirectly attack [the doctor's second opinion] as well"). Accordingly, the Court finds that the ALJ's analysis of Dr. Wheatley's Seizure Activity Assessment, as well as review of the medical record as a whole, indirectly attacks both the consistency and supportability of Dr. Wheatley's Attending Physician's Statement.

## 2. Dr. Eva Misra, MD

Lastly, Plaintiff claims that the ALJ failed to assign proper weight to the opinion of Dr.

Misra, a consultant who examined Plaintiff. [Doc. 16 p. 22]. Plaintiff notes that both Dr. Wheatley and Dr. Misra opined that Plaintiff should be limited to sedentary work, with restrictions for no driving, heights, or moving machinery, but the ALJ held that Plaintiff has the residual functional capacity to perform light work, with similar restrictions. [*Id.*].

In considering non-treating physician opinions, such as Dr. Misra's, an ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists," but the ALJ must "consider findings of State agency medical and psychological consultants or other program physician, psychologists, and other medical specialists as opinion evidence[.]" 20 C.F.R. § 404.1527(e)(2)(i). An ALJ is required to consider every medical opinion of record, 20 C.F.R. § 404.1527, but because Dr. Misra is not a treating physician, the ALJ is not required to defer to her opinion. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Instead, "in weighing a consultative examiner's opinion, an Administrative Law Judge must evaluate the factors listed in 20 C.F.R. § 404.1527(c)." *Williams v. Colvin*, No. 4:15-CV-00082-HBB, 2016 WL 797594, at *4 (W.D. Ky. Feb. 26, 2016). Those factors are: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. § 404.1527(c)(2)-(6). However, there is no rule that requires an articulation of each of these factors. *Albaugh v. Comm'r of Soc. Sec.*, No. 14-CV-10963, 2015 WL 1120316, at *6 (E.D. Mich. Mar. 11, 2015).

The ALJ is not required to give "good reasons" for the weight assigned to non-treating and examining consultants, as "this requirement only applies to treating sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). However, "[u]nless a treating source's opinion is given controlling weight,

the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." 20 C.F.R. § 416.927(e)(2)(ii). Social Security Ruling (SSR) 96–6P provides that, although "[a]dministrative law judges . . . are not bound by findings made by State agency . . . physicians and psychologists . . . they may not ignore these opinions and must explain the weight given to the opinions in their decisions. 1996 WL 374180, at *3 (July 2, 1996).

Here, Plaintiff was consultatively examined by Dr. Misra on October 10, 2013. [Tr. 1006–10]. On examination, Dr. Misra stated that Plaintiff's intellectual functioning appeared normal; Plaintiff exhibited normal gait and station, as well as mobility; that she could get on and off the examining table without difficulty; that Plaintiff's mobility was normal; and that Plaintiff's grip strength was 5/5, right and left. [Tr. 1007]. Additionally, Dr. Misra noted that Plaintiff's "[c]ranial nerves II through XII are grossly intact," while Plaintiff's "[c]erebellar functioning is intact [but] otherwise [Plaintiff] was cooperative, appropriate, and had normal speech." [*Id.*]. Dr. Misra further found that Plaintiff "has chronic seizure disorder, but normal neurological exam today, apparently uncontrolled," as well as stated that Plaintiff "is not allowed to drive, normal cardiac exam, probable coronary artery disease as well, left knee is intact, and hypertension." [Tr. 1008]. She subsequently opined that Plaintiff "retains the capacity to occasionally lift and carry including upward pulling for up to one-third of an eight hour workday to maximum of 10 lbs;" that Plaintiff could lift or carry a maximum of less than ten pounds from one-third to two-thirds of an eight-hour workday; that Plaintiff could stand or walk with normal breaks for four hours of an eight-hour workday, as well as sit without restrictions; and due to Plaintiff' seizure disorder, she should avoid working with machinery, heights, or driving. [Tr. 1009].

In the disability decision, the ALJ summarized Dr. Misra's opinion, stating that while Dr. Misra described Plaintiff as limited to sedentary work, "this limitation appears based on seizure activity, which Dr. Misra describes as uncontrolled . . . this is not the case, as records from Dr. Wheatley document stability in 2014 and 2015."  [Tr. 19].  Plaintiff correctly states that the ALJ failed to indicate what weight was given to Dr. Misra's opinion.

However, the ALJ's failure to assign a specific weight to the consultative examiner's opinion does not constitute a basis for reversal or remand, as the ALJ discussed the substance and noted the deficiencies that he found in Dr. Misra's opinion.  *See Bays v. Colvin*, No. 2:15-CV-170, 2016 WL 4384741, at *2 (E.D. Tenn. Aug. 17, 2016) (holding "the error in failing to explicitly state the weight given to [a consultative examiner's opinion] was harmless[, as] [t]he ALJ discusses the substance of [the consultative examiner's] opinion in multiple sections of his opinion and noted the deficiencies he found in [the] opinion"); *see, e.g.*, *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 272 (6th Cir. 2015) (indicating in dicta that "[a]lthough the ALJ did not assign a specific weight to [the consultative examiner's] opinion, he did emphasize" that the plaintiff failed to return after the initial examination);  *Rearden v. Colvin*, No. 4:15-CV-070-HBB, 2016 WL 1629377, at *8 (W.D. Ky. Apr. 22, 2016) ("Though the ALJ here did not assign specific weight to the state agency psychologists, it can be inferred from the decision that the ALJ rejected their findings."); *Peshe v. Comm'r of Soc. Sec.*, No. 1:14-cv-2359, 2015 WL 6437216, at *12 (N.D. Ohio Oct. 22, 2015) (citing *Reeves* to hold that the plaintiff's claim that the ALJ failed to explicitly state the weight assigned to a consultative examiner's opinion was not a basis for remand, as the ALJ considered and discussed the opinion); *Candela v. Comm'r of Soc. Sec.*, No. 3:14-cv-1157, 2015 WL 4528437, at *14 (N.D. Ohio July 27, 2015).

Although Plaintiff asserts that the opinion of Dr. Misra was not properly considered, the ALJ clearly noted the deficiencies that he saw in the opinion, such as that Dr. Misra described Plaintiff's seizure activity as uncontrolled. [Tr. 19]; *see, e.g.*, *Bays*, 2016 WL 4384741, at *2 ("It is clear that the ALJ did not give Dr. Wireman controlling authority because the ALJ concludes that the claimant was not as limited as Dr. Wireman concluded."). While noting some seizure activity between appointments, Plaintiff's treating neurologist, Dr. Wheatley clearly indicated that Plaintiff's seizures were being controlled with medication. On November 6, 2014, Dr. Wheatley noted that "For now, I think that the Lamictal and Keppra are fairly maximized. Her seizure control seems to be stable." [Tr. 1143]. Subsequently, on March 4, 2015, Dr. Wheatley stated that Plaintiff "seems to be doing fairly well though her seizure control is not complete" and that "If [Lamictal and Keppra] appear maximized then Topamax might be another consideration." [Tr. 1142]. Accordingly, Dr. Wheatley's treatment notes support that while seizure activity was not completely absent, Plaintiff's seizures were being controlled with medication. Additionally, regarding Plaintiff's back pain, the ALJ stated that Dr. Misra's opinion noted a normal gait and station, no need for an assertive device, normal mobility, a full range of motion in the extremities, and that Plaintiff did not report back pain during the exam. [Tr. 19].

Further, the Sixth Circuit has held the failure to assign weight to the opinion of a consultative examiner may constitute harmless error if the ALJ's decision is otherwise supported by substantial evidence. *See Dykes ex. rel. Brymer v. Barnhart*, 112 F. App'x 463, 468 (6th Cir. 2004) ("[I]f the refusal to even acknowledge the opinion of a treating physician was harmless error in *Heston*, then the ALJ's failure in the present case to discuss thoroughly the opinion of a consultative examiner does not warrant reversal.") (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001)). In determining Plaintiff's RFC, the ALJ incorporated limitations

contained in both Dr. Wheatley's and Dr. Misra's opinions relating to avoiding concentrated exposure to extreme heat, that Plaintiff is unable to climb ladders, ropes, or scaffolding, that Plaintiff is unable to have exposure to unprotected heights, open flames or waters, and that Plaintiff is unable to operate motor vehicles or moving machinery. [Tr. 17]. However, although Dr. Wheatley and Dr. Misra both opined that Plaintiff should be limited to sedentary work, as opposed to the ALJ's ultimate light work designation, the ALJ properly stated good reason for providing partial weight to Dr. Wheatley's opinion based upon examining the frequency of Plaintiff's seizures. Additionally, the Court notes that the ALJ's RFC determination is more restrictive than the assessment of the state agency physician Dr. Roslynn Webb, or Dr. Anita Johnson, who reviewed the updated record, and found Plaintiff could perform medium work. [Tr. 18]; *see* [Tr. 79–93, 119–23].

Lastly, the Commissioner correctly states that even if the ALJ improperly evaluated Dr. Wheatley and Misra's opinions, and should have limited Plaintiff to sedentary work, the ALJ still found that Plaintiff could return to her prior work as a data entry clerk—which is classified as sedentary work. [Doc. 18 p. 11–12]. During the disability hearing, the vocational expert ("VE") testified that an individual with Plaintiff's non-exertional limitations could perform Plaintiff's position as a data entry clerk. [Tr. 66–67].

The ALJ asked the VE whether a hypothetical person with Plaintiff's non-exertional limitations could perform Plaintiff's sedentary work as a data entry clerk, and the VE only testified that a hypothetical individual would be unable to perform Plaintiff's past relevant jobs when the ALJ added a limitation that the hypothetical individual would miss on average one day of week a work, an absenteeism limitation which the ALJ has sufficiently discredited. [Tr. 67]; *c.f.*, *Lash v. Astrue*, No. 1:12-cv-1306, 2013 WL 821333, at *8 (N.D. Ohio Mar. 5, 2013) (holding the

deficiencies in the ALJ's reasons for rejecting parts of treating physician's opinion were not harmless error in finding plaintiff could perform light exertional work, despite treating physician opining that plaintiff could perform sedentary work, as the ALJ failed to "cite any evidence suggesting that a hypothetical person with these limitations could, nevertheless, have performed" plaintiff's past relevant work).

Therefore, "because the evidence establishes that [P]laintiff could perform a significant number of jobs if restricted to sedentary work, any error the ALJ committed by formulating an RFC for a range of light work was harmless." *Young v. Comm'r of Soc. Sec.*, No. 1:17-cv-36, 2018 WL 583125, at \*5 (S.D. Ohio Jan. 29, 2018), *report and recommendation adopted by*, 2018 WL 925476 (S.D. Ohio Feb. 16, 2018); *see, e.g.*, *Hannon v. Comm'r of Soc. Sec.*, No. 2:12-cv-463, 2013 WL 3568272, at \*5–6 (S.D. Ohio July 11, 2013), *report and recommendation adopted by*, 2013 WL 4434905 (S.D. Ohio Aug. 16, 2013) (citing *McGuire v. Comm'r of Social Security,* 178 F.3d 1295 (Table), 1999 WL 196508, at \*9 (6th Cir. 1999) (finding where the ALJ found that a claimant could do medium work, but "also found he could perform a range of light and sedentary work," in order to obtain reversal of that decision, "plaintiff would need to demonstrate that he could not perform a limited range of light work or sedentary work")).

Ultimately, "[r]emanding the case to have the ALJ state he gave the opinion a particular weight, either some or little, would be an inefficient use of resources as it would not change the ALJ's determination based [on] the ALJ's opinion and evidence that provides substantial evidence to support the ALJ's decision." *See Bays v. Colvin*, No. 2:15-CV-170, 2016 WL 4384741, at \*2 (E.D. Tenn. Aug. 17, 2016). Therefore, the Court finds that substantial evidence supports the ALJ's RFC determination, and the ALJ's failure to assign a specific weight to the opinion of Dr. Misra does not constitute a basis for reversal or remand.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 15**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 17**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge